**JEFFREY C. METZGER, Bar No. 96583**
**LAW OFFICES OF JEFFREY C. METZGER**
**5120 Campus Drive, Suite 150**
**Newport Beach, CA 92660**
**jmetzger@metzgerlaw.com**
**Phone: (949) 756-1196**
**Fax: (949) 756-0830**

Attorney For Plaintiff, Victor Ruelas

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| VICTOR RUELAS, <br><br> Plaintiff, <br><br> vs. <br><br> HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Defendants. | CASE NO.: 15-cv-1444 <br> COMPLAINT FOR: <br> 1. Breach of Plan Benefits (ERISA) <br> 2. Declaratory Relief <br> 3. Injunctive Relief |

Plaintiff Victor Ruelas, (hereinafter "Ruelas" or "Plaintiff"), hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B) et seq. This Court's jurisdiction is invoked pursuant to 29 U.S.C. Section 1337 and 29 U.S.C. Section 1132(e).

2. Venue is properly laid within the Central District of California, Southern Division, pursuant to 29 U.S.C. Section 1132(e)(2) because the acts

complained of occurred in this district, and because the ends of justice so requires.

3.   The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor Regulations, 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before the Court for judicial review.

## PARTIES

4.   Plaintiff was, and is, a resident of Orange County, California at all relevant times.  Further, when employed at Conextent Systems, Inc. ("Conextent"), his principal place of business was in Orange County.

5.   At all relevant times, Plaintiff was an employee of Conextent, and a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Conextent Systems, Inc. Long-Term Disability Plan ("the Plan") that provides long-term disability insurance and life insurance benefits to its employees.

6.   Defendant HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("HARTFORD") is an insurance carrier and claims administrator duly organized and existing under and by virtue of the laws of the State of Connecticut, and it is authorized to conduct business in the state of California. HARTFORD issued policy No. GLT674184, under which long term disability ("LTD") benefits are provided by The Plan, and policy No. OGL674184 under which group life and waiver of premium benefits are provided by the Plan.  HARTFORD is a claim fiduciary responsible for making benefit determinations and paying benefits under the Plan, and is legally liable for providing the benefits sought in this suit.

7.   Plaintiff is informed and believes and based upon such information and belief alleges that Defendant HARTFORD is a corporation acting as an

agent for the Plan; that Defendants are charged with certain claims-handling responsibilities under the employee benefit plan; that Defendant's responsibilities extend at least in part to misconduct alleged below; and that Defendant's employees and representatives functioned as fiduciaries within the meaning of 29 U.S.C. Section 1002(21)(A), in their dealings relating to Plaintiff's claim for benefits.

**FACTS**

8. Plaintiff was employed as a Product Engineer III for Conextent at the time he became disabled, an occupation for which he provided support to Engineer and Design teams by reviewing test results on specific hardware components and providing feedback and analysis. It is a high-demand, high-energy occupation involving a myriad of duties that constant, chronic pain would interfere, and that requires constant computer use.

9. Plaintiff became unable to work in July 2011 as a result of chronic pain from multiple body areas, particularly in the neck and back due to degenerative disc disease, and his right hand as a result of carpal tunnel syndrome.

10. Under the provisions of the long-term disability policy under the Plan, Plaintiff was, and is, entitled to receive monthly long-term disability benefits because of sickness or injury, if unable to perform the substantial and material duties of his occupation for the first 24 months of disability, and then after 24 months, is unable to perform the duties of any gainful occupation for which she is reasonably qualified by education, training, or experience.

11. Under the provisions of the Life Insurance/AD&D policy under the Plan, Plaintiff is entitled to a waiver of premium (WOP) benefit if disease or injury stops him from working at her own job or any other job for pay or profit that she is, or may reasonable become, fitted for by education training, or experience.

12. Plaintiff timely submitted claims to Defendant for benefits under the LTD and WOP benefits that were supported by the required medical request forms completed by his physician.

13. On February 27, 2012, Defendant determined that Plaintiff was totally disabled from performing the duties of his own occupation, accepted his claim, and began paying monthly benefits disability benefits.  For the following 24 months, Defendant found Plaintiff's conditions to prevent him from performing the material and substantial duties of his occupation.

14. At or around the same time, Defendant also granted Plaintiff's claim for waiver of premium benefits.

15. On August 2, 2013 he was the victim of an assault in which he was grabbed and picked up by his neck, slammed to the floor, and kicked which caused him to loose consciousness. The injuries exacerbated his existing disabilities and resulted in his hospital treatment for a concussion.

16. On August 15, 2013 Plaintiff was determined disabled and entitled to Social Security disability benefits by an Administrative Law Judge, who found him disabled since July 28, 2011 due to several severe impairments.  Plaintiff was represented in this proceeding by the Advocator Group, a vendor to whom Defendant urged him to use to pursue his Social Security claim.

17. However, on February 24, 2014, Defendant terminated Plaintiff's long-term disability benefits unreasonably and arbitrarily.  The denial was based, first, on the opinion of a physician who performed an IME of Plaintiff and concluded that Plaintiff's restrictions were no heavy lifting in excess of forty pounds, no repetitive bending and stooping, and no repeated forceful gripping, grasping, and fine manipulation.  The denial was further based on a sham  employability analysis performed by an in-house consultant, who concluded, based upon an incorrect characterization of Plaintiff's previous occupation and the skills he possessed, that there were "opportunities" upon

which Plaintiff could be expected to engage, although the letter identified no such specific occupations.  In making its determination, Defendant unreasonably dismissed the more accurate opinions of Plaintiff's treating physicians who properly documented his disabling condition, the determination by a Social Security Administrative Law Judge that Plaintiff has multiple severe impairments and meets the definition of being unable to engage in any substantial gainful activity, and the restrictions of the IME concerning Plaintiff's preclusion from repeated grasping and fine manipulation.

18. On February 26, 2014, Defendant terminated Plaintiff's waiver of premium benefits in a letter that was virtually identical to the one referred to in the previous paragraph.

19. Plaintiff timely appealed both the long-term disability and waiver of premium denials on December 8, 2014, supported by updated medical records, the result of functional testing (FCE) that determined Plaintiff to be unable to successfully performed activities that required prolonged sitting or standing, or involved keyboarding that required speed, grasping of objects, bending or lifting, or that was prolonged without the ability to self-pace with brake potential.  Plaintiff's appeal also included a vocational evaluation that concluded Plaintiff was unable to perform the duties of his own occupation, the occupation that Defendant mischaracterized Plaintiff has having performed prior to his disability, and, based upon the results of a transferrable skills analysis, any other occupation for which he would be otherwise trained, educated or experienced, given his station in life, i.e., the Plan definition of "any occupation" disability.  Plaintiff further explained that the reliance on the IME was misplaced because the IME physician specifically concluded that Plaintiff was not able to perform repeated fine manipulation, and that this precluded Plaintiff from performing any

occupation for which he would be otherwise trained, educated, or experienced, given his station in life. Finally, Plaintiff asserted that Defendant's ignoring of the favorable Social Security award was in violation of 9th Circuit law, made all of the worse because it was Defendant who encouraged Plaintiff to pursue such benefits and urged the Advocator Group as his representative.

20. On March 4, 2015, Defendant denied both of Plaintiff's appeals in separate letters that were essentially identical to each other except for setting forth the pertinent provisions regarding the definition of disability from each policy. In upholding the previous determination to terminate the claims, Defendant raised new grounds upon which to base the termination. Specifically, Defendant obtained a paper medical review of a physician who did not examine Plaintiff, but asserted restrictions and limitations that not only differed from those of Plaintiff's treating physicians, but of the IME as well. Defendant abandoned its previous reliance on the IME's restrictions in favor of those of the new paper reviewer. Defendant had performed a new employability assessment performed by an in-house consultant, who corrected the erroneous assumptions regarding Plaintiff's previous employment from the earlier assessment, and then performed a new analysis that concluded there were additional occupations Plaintiff could perform that had never previously been raised. Defendant in this determination, continued to ignore or unreasonably dismissed all evidence submitted by Plaintiff. Finally, Defendant, in an attempt to distinguish the clear, relevant and persuasive findings of the Administrative Law Judge in the Social Security matter, unreasonably and deliberately misinterpreted and mischaracterized the law, the facts, and the Social Security guidelines.

21. In this denial, Defendant stated that its decision was final, no further review would be conducted, and that Plaintiff's administrative remedies had been

exhausted.  However, in raising new grounds for denial and attempting to preclude Plaintiff from responding to its rational for denial at the administrative level, Defendant violated ERISA's procedures.  As a result, on March 31, 2015, Plaintiff, through his counsel, wrote to Defendant advising of its violation of the ERISA procedures, explained that he is rightfully entitled to another appeal of his denied claim  and requested that it agree to review Plaintiff's appeal to such new grounds for denial.  On April 8, 2015, Defendant responded by admitting that it had erroneously characterized Plaintiff's occupation in its employability analysis before the first denial, and that it conducted a new analysis using Plaintiff's correct previous occupation.  However, in a further violation of the ERISA procedures, Defendant claimed that the new employability analysis "is not new information," a factually and legally specious contention.  Nonetheless, Defendant stated that it would refuse to review any additional information Plaintiff submitted in response to its March 4, 2015 denial, even as Plaintiff cited the law that required Defendant to do so.

22.  Nonetheless, on August 2, 2015, Plaintiff appealed the new grounds for denial by submitting legal authority for his right to do so, and supporting the appeal with additional evidence from a vocational consultant and his treating doctor that countered Defendants erroneous conclusions in the second denial and provided further evidence of Plaintiff's disability and entitlement to benefits.

23.  On August 8, 2015, Defendant wrote to Plaintiff refusing to review the additional material and summarily claiming that its final decision was made on "April 8, 2015."  Thereafter, Plaintiff sought all relevant documents supporting the determination to refuse to review Plaintiff's additional appeal, and Defendant refused to provide any additional documents.

24.  Whether Plaintiff is eligible for LTD benefits shall be decided by the court

on de novo review. De novo review is applicable because the Plan does not confer discretionary authority to HARTFORD to decide questions of eligibility for LTD benefits, and even if it did, California Insurance Code Section 10110.6 renders such discretionary authority void as a matter of California law.

25.  To the extent that abuse of discretion review applies to HARTFORD's claim and appeal decision, Plaintiff is informed and believes that HARTFORD denied his claim for LTD benefits because of its financial conflict of interest caused by its dual role as payor of benefits and the claims administrator. HARTFORD's conflict of interest warrants increased skepticism of its decision to deny Plaintiff's LTD claim and appeal. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc) and *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008).

**FIRST CAUSE OF ACTION**

**(BREACH OF PLAN (CLAIM FOR LTD BENEFITS, § 502(a)(1)(B))**

26.  The allegations of paragraphs 1 through 25, inclusive, are incorporated herein by reference.

27.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

28.  At all relevant times, Plaintiff has been entitled to LTD benefits under the Plan. By terminating Plaintiff's claim for LTD benefits under the Plan, and by related acts and omissions, Defendant HARTFORD has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

29.  As a direct and proximate result of the aforementioned conduct of Defendants in failing to reinstate disability benefits, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have

8

COMPLAINT

1    received had Defendants made the disability payments.

2    30.    Plaintiff is entitled to prejudgment interest at the appropriate rate .

3    **SECOND CAUSE OF ACTION**

4    **(BREACH OF PLAN (CLAIM FOR WAIVER OF PREMIUM BENEFITS,**

5    **§ 502(a)(1)(B))**

6    31.    The allegations of paragraphs 1 through 30, inclusive, are incorporated

7           herein by reference.

8    32.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant

9           to bring a civil action to recover benefits due to her under the terms of a

10          plan, to enforce her rights under the terms of a plan, and/or to clarify her

11          rights to future benefits under the terms of a plan.

12   33.    At all relevant times, Plaintiff has been entitled to WOP benefits under the

13          Plan. By terminating Plaintiff's claim for such benefits under the Plan, and

14          by related acts and omissions, Defendant HARTFORD has violated, and

15          continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

16   **THIRD CAUSE OF ACTION**

17   **(DECLARATORY RELIEF PURSUANT TO 20 U.S.C. 1132(A)(1)(B))**

18   34.    The allegations of paragraphs 1 through 33, inclusive, are incorporated

19          herein by reference.

20   35.    An actual controversy exists between Plaintiff and  Defendant arising out of

21          the events alleged herein above.  Specifically, Plaintiff contends that

22          Defendants have no legal basis for denying long-term disability and waiver

23          of premium benefits; that such benefits were wrongfully withheld or denied;

24          that the denial of long-term disability and waiver of premium benefits are

25          breaches of THE PLAN; that the practices of Defendants should be estopped

26          on the basis of equity; that the practices of Defendants, and each of them,

27          fail to satisfy the minimum requirements of ERISA, and are fraudulent; and,

28          that the practices of Defendants, and each of them, are barred as a matter of

9
COMPLAINT

state and federal law.  Plaintiff is informed and believes and based thereon alleges that the Defendants dispute Plaintiff's contentions.

36.   Plaintiff seeks declaratory relief with respect to said controversies, and all other appropriate remedies.

## FOURTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY AND CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO 29 U.S.C. SECTION 1132(a)(3))

37.   The allegation of paragraph 1 through 36, inclusive, are incorporated herein by reference.

38.   ERISA, 29 U.S.C. § 1133 requires that, in accordance with regulations of the Secretary of Labor, every employee benefit plan must afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

39.   The governing regulations from the Secretary of Labor require that a plan must establish and maintain reasonable claims procedures, including, but not limited to, the following:

a.   In the case of an adverse benefit determination, the claimant must be notified of the determination within a reasonable period of time, but not later than 45 days after the receipt of the claim by the plan, except that in the event of special circumstances, the time may be extended by an additional 45 days.  29 C.F.R. §2560.503-1(f)(3).

b.   An adverse benefit determination must include the specific reason or reasons for the determination, reference tot he specific plan provisions on which the determination is based, a description of any material or information necessary for the claimant to perfect the claim, a description of the plan's review procedures and the aplicable time limits, and a statement regarding any internal rule, guideline, protocol

or similar criterion that was relied upon in making the adverse determination.  29 C.F.R. §2560.503-1(g).

c.   The ERISA statute also requires that a fiduciary of an employee benefit plan administer the plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.  29 U.S.C.  §§1001-1168.

d.   When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures.  Such "a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA."  *Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955, 974 (9th Cir. 2008).

e.   A plan participant is entitled to bring a civil action to enjoin any act or practice which violates any provision of ERISA Title I or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this title or the terms of the plan.

40.   Defendant's failure to make a reasonable inquiry, failure to fairly weigh the medical evidence, and faulty and arbitrary determinations of Plaintiff's entitlement to benefits, constitute breaches of its fiduciary duties to participants by failing to provide a reasonable opportunity for a full and fair review.

41.   Further, by asserting new grounds for denial, and basing its denial on new evidence that Plaintiff did not have an opportunity to respond and or challenge, Defendant breached its fiduciary duty.  Moreover, Plaintiff is informed and believes that such conduct is party of a pattern and practice of evaluating such claims against the interest of its beneficiaries.

42.   As a result of Defendant's practices and determination, Plaintiff has sustained injuries and damages as alleged in the entirety of this complaint

43.   By terminating Plaintiff's benefits, Defendant has breached its fiduciary duty, and in addition to the recovery of benefits, Plaintiff is also entitled to, and hereby seeks that this Court grant the following equitable relief:

a.   That the Administrative Record be deemed closed as of following the submission of Plaintiff's August 2, 2015 letter and accompanying reports, and that all evidence and records obtained or produced thereafter be disregard

b.   Enjoining Defendant from denying or discontinuing Plaintiff's benefits for so long as Plaintiff remains totally disabled as defined in the applicable Plan documents;

c.   Removing Defendant HARTFORD as plan and/or claims administrator of Plaintiff's claim for benefits;

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff prays for judgment as follows:

ON THE FIRST CAUSE OF ACTION:

1.   For long-term disability benefits payable under THE PLAN, plus interest;

2.   For reasonable attorney's fees and costs; and,

3.   For such other relief as the court deems appropriate.

ON THE SECOND CAUSE OF ACTION:

4.   For waiver of benefits payable under THE PLAN, plus interest;

5.   For reinstatement of Plaintiff's group life insurance policy;

6.   For reasonable attorney's fees and costs; and,

7.   For such other relief as the court deems appropriate.

ON THE THIRD CAUSE OF ACTION:

8.   For a declaration that de novo review applies to the Court's review of Plaintiff's LTD and WOP claims;

9.     For a declaration that Plaintiff is, was and continues to remain, disabled as defined under the terms of both Plans, and entitled to receive long-term benefits and waiver of premium benefits;

10.    For a declaration that HARTFORD has violated the terms of the Plans by terminating Plaintiff's claim for LTD benefits from February 24, 2014 and waiver of premium benefits from February 26, 2014 through the date of judgment;

11.    For a declaration regarding the Defendants' noncompliance with minimum requirements under ERISA and other federal and state laws in connection with the discontinuation of Plaintiff's coverage;

12.    For reasonable attorney's fees and costs; and

13.    For such other and further relief that the court deems appropriate.

ON THE FOURTH CAUSE OF ACTION:

14.    For injunctive relief: requiring coverage under LTD and group life insurance plans from the time that Plaintiff was disabled up and through the date of judgment and continuing thereafter for as long as Plaintiff continues to remain eligible for benefits; closing the Administrative Record  following the submission of Plaintiff's August 2, 2015 letter and accompanying reports, and that all evidence and records obtained or produced thereafter be disregarded and disallowed into the record; removing Defendant HARTFORD as administrator of Plaintiff's claims for benefits;

15.    For reasonable attorney's fees and costs; and

16.    For such other and further relief as the court deems appropriate.

Dated: September 8, 2015          LAW OFFICES OF JEFFREY C. METZGER
                                  A Law Corporation

                                  By: */s/ Jeffrey C. Metzger*
                                  JEFFREY C. METZGER, Esq.
                                  Attorney for Plaintiff, Victor Ruelas